IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No. _____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

           Plaintiff,

v.

JACKSONVILLE PLUMBERS AND
PIPEFITTERS JOINT APPRENTICESHIP
AND TRAINING TRUST,

           Defendant.
_____/

COMPLAINT

JURY TRIAL DEMANDED

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of race and to provide appropriate relief to aggrieved Black applicants who were adversely affected by such practices. As alleged with greater particularity below, statistical and anecdotal evidence will establish that the Jacksonville Plumbers and Pipefitters Joint Apprenticeship and Training Trust (hereinafter "JPP") violated, and continues to violate, Title VII of the Civil Rights Act of 1964 by failing to hire Black applicants for its apprenticeship program based on their race through its use of a hiring process that includes four interview scoring criteria that are arbitrarily scored. Further, JPP's use of four interview scoring criteria had and continues to have a disparate impact on Black applicants.

## JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII").

2. The employment practice alleged to be unlawful was committed within the jurisdiction of the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1391(b).

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, JPP has been a joint labor-management committee controlling an apprenticeship program and within the definition of Respondents under Section 703(n) of Title VII, 42 U.S.C § 2000e-3.

## ADMINISTRATIVE PROCEEDINGS

5. More than thirty days prior to the institution of this lawsuit, Eric Holford filed a charge of discrimination against JPP alleging, among other things, JPP violated Title VII on the basis of race.

6. Prior to institution of this lawsuit, the Commission found reasonable cause that Title VII had been violated as to Mr. Holford and a class of Black apprenticeship applicants. The

Commission issued a Letter of Determination to JPP on August 14, 2017, providing notice of that finding. The Letter of Determination invited JPP to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

7. The Commission engaged in communications with JPP to provide JPP the opportunity to remedy the discriminatory practices described in the Letter of Determination. The Commission was unable to secure from JPP a conciliation agreement acceptable to the Commission.

8. On November 17, 2017, the Commission issued to JPP a Notice of Failure of Conciliation.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

10. JPP is Jacksonville's local union affiliate registered with the International Pipe Trades Joint Training Committee (IPTJTC).

11. The mission of IPTJTC is to provide structured training programs that prepare individuals to work in the piping industry in one of the four main crafts: pipefitter/steamfitter, plumber, sprinkler fitter, and heating, ventilation, air conditioning, and refrigeration technician.

12. To fulfill their mission, the IPTJTC provides local Joint Apprenticeship Training Committee's course outlines and policy guidelines. JPP adopted the IPTJTC guidelines and course materials to provide a five-year apprenticeship program in pipefitting and plumbing that combines on the job training with classroom instruction.

13. The purpose of the program is to produce workers who are qualified to work in the plumbing and pipefitting industry.

14. Every year since at least 2011, JPP has accepted applications during a defined time period for its apprenticeship program. Interested applicants return applications and required documents to the JPP office.

15. JPP offers an interview to anyone who submits the requisite paperwork and meets the apprenticeship program's minimum qualifications.

16. Apprenticeship interviews are conducted by a selection committee of approximately 8 white male members.

17. During each interview, the panel asks the same 14 questions to first time applicants.

18. Applicants are then scored on a scale of 1-20 in each of 4 categories: Education, Personal Interests, Personal Traits and Attitude.

19. Selection committee members are not provided with any instructions, guidance or training on what to content or questions to consider in any category.

20. Selection committee members individually make subjective and/or arbitrary decisions as to how to categorize applicant answers to the 14 interview questions among the 4 categories, if at all.

21. Selection committee members are not provided with any instructions, guidance or training on how to score answers to individual questions or in any category.

22. Selection committee members individually make subjective and/or arbitrary decisions as to how to weigh and score answers to the 14 interview questions relative to the 4 categories, if at all.

23. Following the interviews, the Selection Committee calculates each applicant's average interview score and then ranks the applicants.

24. The selection committee decides how many apprenticeship positions it will fill each year. JPP makes offers to the highest ranked applicants to fill the apprenticeship positions.

25. The Selection Committee members scored, and continue to score, Black applicants lower than other applicants who provide the same or similar responses to interview questions. For example:

    a. In 2011, a Black applicant who was interested in "fishing" received scores of 10 while a white applicant with the same interest received scores of 17 and 13 for personal interests.

    b. In 2014, a Black applicant with a 2.57 GPA received an education score of 6 while a white applicant with a 2.12 GPA received a score of 11.

26. All Selection Committee members rated Black first time applicants with lower average scores than White applicants.

27. Black first-time applicants have been less likely to be selected for the apprenticeship program than White applicants and the differences in selection rates is statistically significant.

    a. In 2011, JPP interviewed 168 first time applicants for the apprenticeship program. Of those interviewed, 48 applicants were Black. JPP selected 14 first time applicants for the apprenticeship program. Only one (1) of those 14 accepted applicants was Black.

  b. In 2012, JPP interviewed 87 first time applicants for the apprenticeship program. Of those interviewed, 24 applicants were Black. JPP selected 23 first time applicants for the apprenticeship program. Only one (1) of those 23 accepted applicants was Black.

  c. In 2013, JPP interviewed 89 first time applicants for the apprenticeship program. Of those interviewed, 16 applicants were Black. JPP selected 10 first time applicants to the apprenticeship program. Only one (1) of those 10 accepted applicants was Black.

  d. In 2014, JPP interviewed 103 first time applicants for the apprenticeship program. Of those interviewed, 18 applicants were Black. JPP selected 17 first time applicants to the apprenticeship program. Only one (1) of those 17 accepted applicants was Black.

  e. In 2015, JPP interviewed 90 first time applicants for the apprenticeship program. Of those interviewed, 8 applicants were Black. JPP selected 29 first time applicants to the apprenticeship program. Only one (1) of those 29 accepted applicants was Black.

28. From 2011 to the present, JPP used the same four interview scoring criteria in its hiring process, and there have been no changes that would materially alleviate the gross disparity in the rates at which Black applicants and non-Black applicants are accepted.

29. Each qualified first time Black apprenticeship applicant who was not hired as a result of JPP's use of the four interview scoring criteria is a member of the class of persons for whom EEOC seeks relief in this action.

## STATEMENT OF CLAIMS

30. As set forth in paragraphs 10 through 29, since at least 2011, JPP has intentionally failed to hire Black applicants for apprenticeship positions and to deprive Black applicants of employment opportunities in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2(d).

31. The unlawful employment practices complained of in paragraphs 10 through 29, were intentionally done with malice and/or reckless indifference to federally protected rights.

32. As set forth in paragraphs 10 through 29 since at least 2011, JPP subjected a class of aggrieved Black applicants to discrimination based on their race, in violation of Title VII, by using, and continuing to use, a selection process for hiring, namely the four interview scoring criteria, that has had, and continues to have, a disparate impact on Black applicants in violation of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

## PRAYER FOR RELIEF

Wherefore the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, including the use of selection processes that have a significant disparate impact on Black applicants;

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black applicants and which eradicate the effects of its past and present unlawful employment practice, including, but not limited to, requiring JPP to: (1) restructure its interview process and its scoring; (2) provide training on JPP's Title VII obligations to all participants in the apprenticeship hiring process; and (3) review

its hiring process and procedures on a periodic basis to ensure that no adverse impact on the basis of race is present.

  C. Order Defendant to make whole a class of aggrieved Black applicants by providing appropriate back pay with prejudgment interest, in the amounts to be determined at trial, and other affirmative relief, necessary to eradicate the effects of its unlawful employment practices, including but not limited to instatement and front pray in lieu thereof;

  D. Order Defendant to make whole a class of aggrieved Black applicants subjected to JPP's intentional unlawful employment practices by providing compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in the amounts to be determined at trial;

  E. Order Defendant to pay applicants subjected to JPP's intentional unlawful conduct punitive damages for the malicious and reckless conduct described above, in the amounts to be determined at trial;

  F. Grant such further relief as the Court deems necessary and proper in the public interest; and

  G. Award the Commission its costs in this action.

Dated: July 10, 2018

Respectfully submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M. Street, N.E.
Washington, DC 20507

ROBERT WEISBERG
Regional Attorney
Florida Bar No. 285676
KIMBERLY A. CRUZ
Supervisory Trial Attorney
Florida Bar No. 153729
U.S. Equal Employment Opportunity
Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, FL 33131

*/s/ Brandi L. Meredith*
Brandi L. Meredith
Trial Attorney
Florida Bar No. 27668

Chelsae Ford
Trial Attorney
Florida Bar No. 106029
U.S. Equal Employment Opportunity
Commission
Tampa Field Office
501 E Polk Street, Suite 1000
Tampa, FL 33602